UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

DALE EDWARD DOUWSMA )
 )
V. ) NO. 2:15-CV-100
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for disability insurance benefits was administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 12], while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was born on January 27, 1974, and is a "younger individual" under the Medical-Vocational Guidelines [the "Grid"]. He has high school and college degrees. The ALJ found he cannot perform his past relevant work as an office assistant, trucking mechanic and soldier. Plaintiff was a soldier in the United States Army from April 2002 to August 2007 (Tr. 17). He was found by the Veterans Administration to have a 70% service connected disability, with 50% of that percentage ascribed to post-traumatic stress disorder (Tr. 478).

Plaintiff's medical history is summarized in the Commissioner's brief as follows:

> In 2012 and 2013, Plaintiff received treatment at the Mountain Home Department of Veterans Affairs (VA) Medical Center for mental health concerns (Tr. 244-56, 262-300, 304-13). Since at least June 2012, he received a 70% service-connected disability rating from the VA, with a 50% service-connected rating for PTSD (Tr. 304). He also attended classes at Milligan College and graduated in May 2013 with a degree in Computer Information Systems (Tr. 37, 250-51, 263-64, 268, 290, 299, 312).
> At a December 2013 mental health medication management appointment, Plaintiff showed logical and goal-directed thought processes, normal attention and concentration, good impulse control, and fair to good insight and judgment (Tr. 239-44). He said he took his mental health medication as prescribed and felt "blah" (Tr. 239). The treatment provider assessed PTSD and adjusted Plaintiff's medications (Tr. 242).
> In February 2014, Plaintiff reported worsening anxiety (Tr. 227-29). The

2

treatment provider adjusted his medications and referred him to therapy for PTSD (Tr. 229).

Two months later, Plaintiff reported that he had not gone to group therapy as scheduled and had stopped taking a newly-prescribed medication after four days due to gastrointestinal side effects (Tr. 211, 221). He had been fishing earlier that morning and described his mood as "alright" (Tr. 211, 213). The treatment provider again adjusted Plaintiff's medications and recommended group therapy for PTSD (Tr. 214).

At a July 2014 mental health medication management follow-up appointment, Plaintiff reported feeling "fair . . . not too bad" and said that his medications kept him from "getting too over agitated" (Tr. 328). He had not needed his prescribed lorazepam regularly and had several refills remaining at the pharmacy (Tr. 328). He denied any alcohol or illicit substance abuse (Tr. 328). He had not provided a urine sample for a drug screen at his last visit and said that he was not sure that he would have enough time to submit a sample again that day, which the treatment provider noted as "suspicious behavior" (Tr. 328). After the treatment provider informed Plaintiff that he could not receive lorazepam without a clear drug screen, he agreed to a serum drug screen (Tr. 328).

In August 2014, state agency psychological consultant Rebecca Joslin, Ed.D., reviewed the record and concluded that Plaintiff could maintain attention, concentration, persistence, and pace with appropriate breaks despite periods of increased signs and symptoms; could interact occasionally with coworkers, supervisors, and the general public; and could adapt to infrequent changes in the workplace (Tr. 42-46). In October 2014, Edward Sachs, Ph.D., another state agency psychological consultant, reviewed the record and also concluded that Plaintiff could maintain attention, concentration, persistence, and pace with appropriate breaks despite periods of increased signed and symptoms; could interact occasionally with coworkers, supervisors, and the general public; and could adapt to infrequent changes in the workplace (Tr. 55-59).

[Doc. 17, pgs. 2-3].

The ALJ summoned a vocational expert ["VE"] to the administrative hearing held on February 5, 2015, but did not call upon him to testify (Tr. 29).

On February 11, 2015, the ALJ drafted his hearing decision, which became the final decision of the Commissioner. The ALJ found that the plaintiff suffered from severe impairments of post-traumatic stress disorder; rule out depressive disorder; and a history of alcohol abuse, in remission. He found that plaintiff's osteoarthritis and hearing

3

loss were non-severe (Tr. 15).

At the third step of the sequential evaluation process, after finding that the plaintiff's impairments did not meet or equal any of the listings of impairments found in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ rated the plaintiff's levels of mental impairment in the four areas of the "paragraph B" criteria set out in the mental listings. He found that the plaintiff had only a mild restriction with respect to his activities of daily living and in social functioning. He found a moderate restriction regarding concentration, persistence or pace. He found that the plaintiff had never suffered from decompensation. (Tr. 16).

He then found that the plaintiff had the residual functional capacity ["RFC"] to perform medium work except that he could only perform entry level jobs (Tr. 17). He then discussed plaintiff's stated activities and his medical records from the VA, noting that the plaintiff "draws service connected disability due to…post-traumatic stress disorder." (Tr. 17-18). He noted the plaintiff's various medications which he has been prescribed to treat his mental condition. He mentioned that the plaintiff had turned down "two well-paying job offers" because they would have required plaintiff to live overseas away from his wife. He noted the instances plaintiff described when he had confrontations due to him losing his temper (Tr. 18-19).

The ALJ then discussed the examination ordered by the Commissioner performed by Dr. Robert A. Blaine, which showed normal motion in plaintiff's knees and right elbow. The exam also showed plaintiff had normal hearing for conversational speech

4

when plaintiff's hearing aids were in place (Tr. 19-20).

The ALJ then discussed the findings of the State Agency physicians and psychologists. They found no physical impairment. Regarding the mental findings, he noted that they found plaintiff's "mental RFC limits him to occasional contact with the general public, supervisors and co-workers, and to handling no more than infrequent changes in the work place." He stated that they found a mild restriction in plaintiff's activities of daily living, and moderate restrictions in maintaining social functioning and in maintaining concentration, persistence or pace (Tr. 20).

He then stated that he found the plaintiff "not entirely credible for the reasons explained in this decision." (Tr. 20).

The ALJ then discussed the weight he gave to the opinions of the State Agency psychologists. He stated that he gave them "some weight," but said "the objective evidence of record does not support their conclusions and their assessment of the claimant's ability to perform work-related activities appears to be an underestimate of his true capabilities." (Tr. 20).

The ALJ then utilized Rule 203.29 of the Medical-Vocational Guidelines, not merely as a framework for decision making, but as the basis for his final decision. He said that "the additional limitations have little or no effect on the occupational base of unskilled medium work." The only "additional limitations" he included in the RFC were a restriction to only entry level jobs. Accordingly, based upon that Grid rule, he found that the plaintiff was not disabled (Tr. 21-22).

Plaintiff asserts that the ALJ erred in three respects. First, he states that the use of the Grid rule was inappropriate due to the presence of plaintiff's serious non-exertional mental impairments which would necessitate the use of a vocational expert. Second, plaintiff argues that the ALJ should have considered and discussed the plaintiff's service-connected disability rating from the Veterans Administration. Finally, he alleges that substantial evidence does not support the finding that the plaintiff was not credible.

As plaintiff concedes, credibility findings by the ALJ are entitled to great deference. The Sixth Circuit has repeatedly held that those findings are off limits to second-guessing by the courts except for "compelling reasons." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013); *Payne v. Comm'r of Soc. Sec*. 402 F. App'x 109, 112-13 (6th Cir. 2010). In this case, the ALJ noted the plaintiff's activities of daily living, his completion of college, and his job offers for lucrative employment overseas which the plaintiff (understandably) refused to take so as to not be separated from his wife. The ALJ found that the plaintiff has the severe impairment of post-traumatic stress disorder,but found that he was not credible in any assertion that he could perform less than any entry level job at the medium level of exertion or lower. The real question is whether substantial evidence, including the medical proof, supports that finding. The issue of use of the Grid hinges on this as well.

Here, the VA has given the plaintiff a seventy percent disability rating with fifty percent being for post-traumatic stress disorder from his military service. Obviously, that evidence does not support the ALJ's finding that the plaintiff has no non-exertional impairment which would preclude the full range of medium entry-level work. The only

6

other medical evidence comes from the two State Agency psychologists. Both of them found that the plaintiff had moderate limitations in both concentration, persistence and pace and social functioning. With respect to the latter, they found that he would be able to interact with the general public and supervisors only on an occasional basis. (Tr. 45 and 58-59). This is the universe of proof in this record regarding the impact of the plaintiff's PTSD on his ability to perform work-related functions.

Thus, there is no proof from any mental health source that the plaintiff can interact with the general public and supervisors except on an occasional basis. In the case of *Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990), the Sixth Circuit remanded the case to the Commissioner because the Appeals Council relied entirely on the Grid to find Mr. Abbott to be "not disabled despite the presence of significant nonexertional impairments…" in the form of severe mental impairments. *Id*, at 927. It certainly appears to this Court that the plaintiff in this case has a significant nonexertional impairment which would likewise preclude the use of the Grid to find him not disabled. Here, the *only medical proof* shows he can interact with the public and supervisors only on an occasional basis. Granted, the ALJ disagreed with these medical opinions. Also, it is his job to formulate a claimant's RFC. However, it surely takes more than the ALJ's lay intuition to discount the *only* medical opinions that exist so as to use the Grid. It is not a case of agreeing with one doctor over another, but of disagreeing with all of the doctors and coming to his own conclusion.

The Commissioner argues that a remand to consider the opinions of the State Agency psychologists would be futile because the reports which contain their findings

7

both ultimately found that the plaintiff was not disabled.  However, in the Disability Determination Explanation in which Dr. Joslin's opinion appears, the Commissioner found that the plaintiff was capable of the jobs of assembler, industrial cleaner and laboratory sample carrier (Tr. 47) which would accommodate the plaintiff's mental impairment.  The other, at the reconsideration level, which contained the opinion of Dr. Sachs, found he could perform his past job as an airframe and power plant mechanic (Tr. 60), while the ALJ found that plaintiff can no longer perform any of his past relevant work (Tr. 20).

The ALJ chose not to utilize the VE who was available to testify as to the existence of jobs which a person could perform who would only be required to deal with the public, coworkers or supervisors on an occasional basis.  He also chose not have any consultative mental examination which possibly could have provided more insight into the impact of plaintiff's PTSD on his ability to do work related activity.  To go against all the medical opinion evidence under the facts of this case cannot be substantially justified.

It may well be that the Commissioner, through the ALJ, felt it was a waste of time and resources to utilize the VE, because given the plaintiff's activities and college education, the result most likely will be the identification of a significant number of jobs even if the plaintiff should be restricted to jobs where he would work more with things than people.  But to cut corners in that fashion is to proceed down a slippery slope and could ultimately undermine confidence in the Social Security adjudicative process.

It is not necessary at this time to address the third issue raised by the plaintiff of what consideration must be given by the ALJ to the plaintiff's service connected

disability for PTSD.

The Court will not foreclose the Commissioner's opportunity to further develop the mental health evidence. However, it is recommended that the case be remanded for further evaluation of the effect of the plaintiff's mental impairment on his RFC, and for the use, if necessary, of a vocational expert. Therefore, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be GRANTED in his request for a remand, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be DENIED.[1]

                              Respectfully submitted,

                                                s/ Clifton L. Corker
                                                United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).